**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HAROLD G. BROWN, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 04 C 6306** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before this Court on the parties' cross-motions for summary judgment. Plaintiff Harold G. Brown, Jr. ("Plaintiff" or "Claimant") challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Defendant" or "Commissioner"), claiming that her denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") should be reversed and remanded because the decision contains errors of law and is not supported by substantial evidence. For the following reasons, this Court denies Plaintiff's motion for summary judgment, grants the Commissioner's motion for summary judgment, and affirms the Commissioner's decision to deny benefits to Claimant.

# I. BACKGROUND FACTS

## A. PROCEDURAL HISTORY

Claimant filed an application for DIB and SSI on July 31, 2002, alleging that he became disabled on June 21, 2002 because of pain related to degenerative joint disease[1] ("DJD"). R. 52-54, 209-210. His application was denied initially and again upon request for consideration. R. 25-29. Claimant requested a hearing before an administrative law judge ("ALJ"). R. 35. Claimant subsequently attended a hearing on November 3, 2003 before ALJ Daniel Dadabo, R. 222-59, who determined that Claimant was not disabled because he has the residual functional capacity ("RFC") to perform medium level work and could perform his past work as a restaurant cook. R. 14-22. On June 24, 2004, Claimant filed a request for review, but this request was denied by the Appeals Council on August 10, 2004. R. 5-11. On September 30, 2004, Claimant filed a timely complaint with this Court for review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1).

## B. HEARING TESTIMONY – NOVEMBER 3, 2003

### 1. Claimant's Hearing Testimony

Claimant was forty years old at the time of the hearing. R. 226. He has a high school education as well as vocational training in culinary arts and food service sanitation; he

---

[1]"Degenerative Joint Disease", now most commonly called "osteoarthritis", is "a chronic disorder of joint cartilage and surrounding tissues that is characterized by pain, stiffness, and loss of function." The MERCK MANUAL - SECOND HOUSE ED., Ch. 66, *at* www.Merck.com.

worked in the food service industry for most of his working life until June, 2002, primarily for restaurants and hotels.[2] R. 226-228. Claimant's past jobs required him to be on his feet continuously throughout the work shift, to lift bags of onions and potatoes that sometimes weighed up to 50 pounds, and to constantly use his arms and hands to chop vegetables and perform other prep work. R. 228, 230, 252.

Claimant states that he is unable to work due to pain in his left hip, knee, and foot, and his lower back, all caused by DJD, and side effects caused by medication to control pain and diabetes. R. 225, 229. He claims that his medications cause extreme drowsiness and diarrhea, side effects that limit his ability to stay on task at work. R. 229, 231-232. He has been taking Metformin and Glipizide to control his diabetes since February or March of 2002, and Tramadol and Tylenol to control pain since July or August of 2002. R. 229. Claimant also takes Naprosyn, which is an anti-inflammatory medication. R. 232. He claims that all of these medications except Glipizide cause side effects. R. 231-32. Claimant alleges that the Naprosyn and the Tramadol put him to sleep within 30 minutes, and the Tylenol 3 causes diarrhea. *Id.* The Tylenol 3 eases his pain, but does not eliminate it. On a scale from 1-10, Claimant claims that he experiences pain at a level between 6-7 with medication. R. 231, 232, 238. The diabetes, however, is controlled by the medication. R. 234.

Claimant claims that the worst restriction caused by his medical impairments is lack of mobility. R. 232. He is unable to move around normally because of the pain in his left

[2]Although Claimant reported working into June, 2002, the ALJ cites a medical treatment form that states Claimant was unemployed in March 2002. R. 21, 78, 148, 226.

hip, and swelling in his left knee and foot, and he uses a cane to ease pressure on his left side. R. 229, 232-33. Claimant states that the cane was prescribed by Dr. Sia, who is one of Claimant's primary treating physicians. R. 229-230. Claimant also states that one of his doctors recommended a hip replacement, but he is unable to afford surgery due to lack of health insurance. R. 233. Claimant claims that according to his doctor, his condition is worsening, and will not improve without hip replacement surgery. R. 241.

Claimant has never tried to stand for an extended period of time since the onset of his condition, but he believes that he would be able to stand on a level surface for 5-10 minutes. R. 234. Claimant thinks he could walk half a block if necessary, and he is able to climb 4-5 stairs, but this exacerbates his pain. R. 234-35. Claimant alleges that his left leg will no longer carry his weight if he walks for half a block, and he claims that he is not able to touch his toes, tie his shoes, or put on socks. R. 235, 243-45. His mother assists him with these tasks, and also helps him to bathe. R. 235, 244.

Claimant lives with his mother, he does not grocery shop, and he spends his days sitting in a chair, watching television. R. 236. He alleges that he is able to sit for 15-20 minutes before the pain forces him to get up and move about or, more often, lie down; at home, he typically spends between 10-12 hours per day in a reclined position. R. 236-37, 239. During the course of the hearing, Claimant sat on a pillow to ease pain caused by sitting on the flat chair. R. 240. Claimant states that he has not traveled anywhere in 30 years. R. 240.

Claimant's mother was prepared to testify on his behalf, but the ALJ asked Claimant's

attorney to make an offer of proof in lieu of testimony. R. 249. That testimony would have been as follows: Claimant's mother takes care of Claimant. She cooks for him, shops for him, and sometimes helps him get up from the toilet seat. Claimant is not able to maneuver up and down stairs, he does not leave the house often, and does not socialize very frequently. R. 250.

**2. Mr. Lee Knutson – Vocational Expert ("VE")**

Following the Claimant's testimony, the VE testified. The VE described the Claimant's previous work as skilled jobs considered to be in the medium work category. R. 251-52. The ALJ then asked the VE to assume a hypothetical individual with a high-school education and Claimant's work background who was able to perform a sedentary job subject to occasional cane use. R. 253. According to the VE, such a person could not perform the Claimant's previous work as a restaurant cook. R. 253. The VE did identify 18,200 representative jobs that such a person could perform: 4,800 jobs as a bench assembler; 5,400 jobs as an information clerk; 800 jobs as a visual inspector, checker, or weigher; and 7,200 jobs in sedentary clerical and cashier positions. R. 254. The ALJ asked the VE to further assume that this individual would also have to periodically recline during the day. R. 256. The VE responded that such a person would not be employable in the job market. R. 257.

The ALJ modified the hypothetical so that the individual would only lie down during scheduled breaks, and the VE agreed that such a person would be employable. *Id.* The ALJ asked the VE what latitude an employee has to be off task outside of scheduled breaks before competitive employment no longer would accommodate them. R. 258. The VE responded that there is very little latitude in unskilled jobs because such jobs involve a supervisor who

expects to see the employee working at all times. *Id.* Therefore, the employee must either be working or look like he is working in order to keep the job. *Id.* Claimant's attorney then questioned the VE regarding the availability of facilities for reclining at the types of jobs the VE had mentioned. *Id.* The VE said that such jobs typically do not provide facilities for reclining. *Id.*

**C. MEDICAL EVIDENCE**

**1. Dr. Basava Ancha – Treating Physician**

In March 2002, Claimant began to experience symptoms of diabetes. R. 65. On March 15, 2002, Claimant went to the emergency room at Oak Forest Hospital, where he was diagnosed with diabetes mellitus[3]. R. 149, 153-54. Dr. Basava Ancha prescribed Metaformin and Glipizide to control the diabetes, and Claimant continues to take both of these medications. R. 111, 146.

On June 25, 2002, Claimant again went to the emergency room at Oak Forest Hospital, this time complaining of pain in his lower back. R. 146. He had not fallen or sustained any recent injury, yet he was experiencing pain in his lower back and left hip, radiating down his left leg to his knee, with pain, numbness, and tingling at times. *Id.* Claimant reported that this caused him to have difficulty bearing weight. *Id.* Dr. Ancha

[3]Diabetes Mellitus is "a metabolic disease in which carbohydrate utilization is reduced and that of lipid and protein enhanced; it is caused by an absolute or relative deficiency of insulin and is characterized, in more severe cases, by chronic hyperglycemia, glycosuria, water and electrolyte loss, ketoacidosis, and coma; long-term complications include development of neuropathy, retinopathy, nephropathy, generalized degenerative changes in large and small blood vessels, and increased susceptibility to infection." STEDMAN'S MEDICAL DICTIONARY 473 (Marjory Spraycar, ed., Williams & Wilkins 26th ed. 1995).

observed tenderness to palpation, paraspinal muscle spasms, and positive straight leg raising; X-rays were taken. R. 142. The preliminary radiology report reads: "L spine - ? Mild DJD and left hip - ? Mild osteo arthritis." R. 144. Dr. Ancha prescribed Naprosyn, rest, elevation of the affected area, and ice. R. 143-45.

**2. Dr. Ranjit Sigamony – Treating Physician**

On September 24, 2002, Claimant returned to the emergency room, again complaining of pain but reporting no weakness in his legs. R. 135-138. His chief complaint was that he required a refill on his medications. R. 136, 138. Dr. Ranjit Sigamony continued the prescription for Naproxen, and also prescribed Ultram, for severe pain.[4] R. 135, 137, 138. At this time, straight leg rising was again positive, and treatment records describe Claimant's DJD as severe. R. 140. The treatment records also indicate that Dr. Sigamony referred Claimant to an orthopedic surgeon for evaluation. R. 137, 139. Although a treatment form from Cook County Bureau of Health Services, dated September 30, 2002, indicates that Claimant saw an orthopedic specialist, the writing is barely legible, and it is unclear what, if anything, was determined. R. 140. Claimant references this document only to note that "[t]reatment records describe Mr. Brown's [DJD] as severe." P. Mot. 3. Defendant does not reference this document at all.

**3. Dr. John Sia, Treating Physician, and Other Medical Professionals**

---

[4]Although Claimant was prescribed Ultram, he does not list Ultram among the medications he is taking. He does, however, list Tramadol, which is the generic form of Ultram. PHYSICIAN'S DESK REFERENCE, 2551 (59th ed. 2005).

On October 8, 2002, Dr. John Sia examined Claimant at the ambulatory care services clinic of Oak Forest Hospital. R. 126-129. Dr. Sia diagnosed Claimant with DJD of the left hip and diabetes mellitus. R. 129. Dr. Sia continued to treat Claimant thereafter, and also referred him to Oak Forest Hospital, Cook County Bureau of Health Services. R. 115, 126-27, 172, 229, 233.

Claimant returned to Oak Forest Hospital on two occasions in December, 2002. R. 124-125. The treatment form dated December 9, 2002, is not legible other than a reference to DJD; the treatment form dated December 23, 2002, although not entirely clear, reflects that Claimant continued to have problems with his left hip and knee, and also that he was unable to balance on the scale. *Id.*

On February 10, 2003, Claimant was seen by a nurse at Cook County Hospital. 177-182. The nurse, Esther Sanfordini, noted that Claimant was experiencing pain at a level 8 in his left hip, knee, and foot, and that the pain worsened with movement, standing, and sitting. R. 182. Ms. Sanfordini also noted that Claimant was experiencing symptoms of fatigue, stomach problems, dizziness, and diarrhea. R. 181.

On April 22, 2003, Claimant again reported pain in his lower back and buttocks, as well as tingling in his left leg. R. 170. An unidentified doctor diagnosed chronic low back syndrome, and referred Claimant to an orthopedist. *Id*. However, a radiological examination by Dr. K. Parameswar of the lumbosacral spine and pelvis was normal and did not show diagnostic abnormalities: "The study reveals no evidence of bulging or herniation of the intervertebral disc, compression of the dural sac or nerve root at the examined levels, and no

evidence of spinal stenosis is present. IMPRESSION: No diagnostic abnormality is seen in this study." R. 176.

The final treatment record is from Cook County Bureau of Health Services, dated June 17, 2003. R. 173. The doctor is unidentified, and the record itself is brief. *Id.* There are two references to a cane, but it is not clear what either reference means, and much of the other writing is not legible. *Id.* The doctor continued Naproxen and recommended physical therapy, heat, and possibly a cane. *Id.*

**4. Dr. Suresh Mahawar – Consultative Physician for SSA**

On October 23, 2002, Dr. Suresh Mahawar performed a consultative examination of Claimant at the request of the Social Security Administration ("SSA"), in connection with Claimant's application for disability benefits. R. 157-160. Dr. Mahawar examined Claimant at his office, and also reviewed Claimant's medical records.[5] R. 157. Dr. Mahawar suggested that Claimant's left hip and low back pain could be due to DJD, and he diagnosed Claimant with diabetes mellitus and obesity. R. 159. However, Dr. Mahawar found no anatomic abnormality of the cervical, thoracic, or lumbar spine, no significant tenderness or muscle spasm, and found that straight leg raising was negative. R. 158. Dr. Mahawar reported that objective findings were normal and Claimant "should be able to walk without a cane due to lack of objective findings." *Id.*

**3. Dr. Robert T. Patey – Reviewing Physician for SSA**

[5]On October 29, 2003, Claimant's attorney submitted additional medical records to the ALJ for review. These records contained duplicates of records that Dr. Mahawar reviewed, but also contained additional records from treatment Claimant received in 2003.

On October 28, 2002, Dr. Robert T. Patey reviewed Claimant's medical history for the SSA as an assessment of Claimant's RFC. R. 161-168. Dr. Patey did not examine Claimant, but reviewed the medical records in Claimant's file.[6] R. 161. Dr. Patey found that the medical evidence indicated that Claimant suffered from diabetes and mild degenerative arthritis, and that he was obese at 5' 11", 315 lbs. R. 168. Dr. Patey noted that an X-ray of the L-S spine and left hip showed mild degenerative arthritis, and that Claimant used a cane to alleviate pain during prolonged ambulation, but that his diabetes was under control with medication. *Id.* He noted that Claimant had a full range of motion in his L-S spine with a normal sensory exam; Claimant's hips lack 10˚ of flexion and his knees lack 20˚ of flexion. *Id.* Accordingly, Dr. Patey reduced Claimant's RFC to medium work. *Id.*

**D. THE ALJ'S DECISION**

Claimant was denied benefits by the ALJ in a decision dated November 26, 2003. R. 14-22. The ALJ made a determination based on the five step sequential analysis. *See* 20 C.F.R. § 416.1520. At step one, the ALJ found that Claimant had not performed substantial gainful activity since June 21, 2002, his alleged date of disability onset. R. 18. At steps two and three, the ALJ found that although the Claimant's impairments of diabetes mellitus, osteoarthritis, and obesity qualified as "severe," they failed to meet or equal the required level of severity set forth for any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. R. 18-19.

At step four, the ALJ found that Claimant has a RFC for medium work. R. 21. The

---

[6]This evidence included medical records of treatment prior to October, 2002.

ALJ reached this decision by first considering the Claimant's demeanor during the hearing and testimony regarding pain and physical limitations. R. 20. The ALJ noted that Claimant's treating physician, Dr. Sia, had "not recorded symptoms that seem even reasonably close to this degree of discomfort." *Id.* The record did, however, reflect that Claimant "has undergone a handful of emergency room visits since the alleged date of disability onset, and April 28, 2003 CT scan testing shows a normal pelvis and normal lumbar spine." *Id.* The ALJ further determined that although it appeared that Claimant had "received a referral to determine whether he needed a cane, [] the record does not document that any treating physician actually prescribed a cane." R. 21. After considering this conflicting evidence, the ALJ determined that substantial evidence supported the opinion of Dr. Robert Patey, the non-examining state agency medical consultant, who concluded that Claimant remained able to perform a significant range of medium work. *Id.* Claimant did not meet his burden at the fourth step and, therefore, was not disabled. *Id.* Having determined at Step 4 that Claimant was not disabled, the ALJ did not proceed to Step 5 of the analysis.

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id*. Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the

reasons for accepting or rejecting "entire lines of evidence." *Id.* If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it can not stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), but it does not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id.*; *Nelson*, 131 F.3d at 1234. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B. DISABILITY STANDARD**

Disability insurance benefits are available to plaintiffs who can establish "disability" under the terms of the Social Security Act. *Brewer v. Carter*, 103 F.3d 1384, 1390 (7th Cir. 1997). An individual is disabled if that individual has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, a disabled individual is eligible for DIB only if that individual is under a disability. *Id*. § 423(a). An individual is under a disability if she is unable to do her previous work and can not, considering her age, education, and work

experience, partake in any gainful employment that exists in the national economy. *Id*. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if, at any step of the process, the ALJ finds that the Claimant is not disabled. *Id*. The ALJ must inquire under Step 1 whether the Claimant is working in any substantial gainful activity. If so, the inquiry ends and the Claimant is denied benefits. If not, the ALJ proceeds to Step 2, where he determines whether the Claimant's impairment is severe. If so, in Step 3, the ALJ asks whether the impairment meets or equals a listed impairment in 20 C.F.R.,Part 404, Subpart P, Appendix 1. If the finding at Step 1 is negative and affirmative at Steps 2 and 3, the Claimant will be deemed "disabled" without further inquiry. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). However, if Step 3 is negative, that is, the impairment is severe but does not meet a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1, then the inquiry continues. Under Step Four, the ALJ must ask whether the Claimant is able to perform her past relevant work. If not, under Step 5, the ALJ must determine whether the Claimant's age, education, and past relevant work experience in reference to her residual functional capacity, enable her to do other work. *Id*. § 404.1520(a)(4)(i)-(v).

In order to determine whether the Claimant can perform any past relevant work (Step 4), the ALJ assesses the Claimant's residual functional capacity. *Id* . § 404.1520(e). The RFC is defined as the most an individual can do after considering the effects of physical and

mental limitations that affect her ability to perform work-related activities. *Id*. § 404.1545. The burden of proof is on the Claimant through Step 4; the burden shifts to the Commissioner only at Step 5. *Clifford*, 227 F.3d at 868. At Step 5 of the disability analysis, the Commissioner has the burden of proving that Claimant has the ability to engage in other work existing in significant numbers in the national economy. *Young v. Sec'y of Health & Human Servs*., 957 F.2d 386, 389 (7th Cir. 1992).

## III. DISCUSSION

The issue presented is whether the ALJ erred at Step 4 by rejecting Claimant's testimony and failing to consider all of the evidence. Specifically, Claimant argues that: (1) the ALJ erred in finding that Claimant did not experience significant side effects from medication; (2) the ALJ erred in concluding that Claimant did not require a cane; and (3) the ALJ erred in failing to consider the impact of Claimant's obesity on his RFC. This Court will consider each of these arguments in turn.

### A. THE ALJ REASONABLY EVALUATED CLAIMANT'S TESTIMONY AND MEDICAL EVIDENCE REGARDING ALLEGED SIDE EFFECTS

At Step 4, the ALJ must determine whether the claimant retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. In making this determination, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms in order to find whether those symptoms affect the individual's ability to do basic work activities." *Scheck v. Barnhart,* 357 F.3d 697, 701 (7th Cir. 2004) (internal quotations

omitted). The ALJ's assessment of the Claimant's credibility is inherent in this analysis. *Id.* An ALJ's credibility determination will not be disturbed unless it is patently wrong. *Diaz*, 55 F.3d at 308. "Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts." *Floress v. Massanari*, 181 F.Supp.2d 928, 937 (N.D. Ill. 2002).

Claimant argues that the ALJ erred at Step 4 by improperly discounting Claimant's testimony about the side effects of his medication. Claimant alleges that his medications caused him to suffer side effects of sleepiness and diarrhea, and that these side effects caused serious functional limitations that affected his RFC. P. Mot. 9-10. Claimant argues that the ALJ erred by failing to take these side effects into consideration. In response, the Commissioner argues that the ALJ properly rejected Claimant's allegations because "his treating physician has not recorded any history to indicate that the claimant *routinely* is experiencing intrusive concentration deficits or bowel interruptions." R. 20. (emphasis added). The Commissioner further argues that the ALJ could reasonably have expected Claimant's physicians to have noted the alleged side effects if they were as serious as Claimant alleges, and that the physicians would have adjusted Claimant's medications accordingly.

One instance of a complaint does not establish routine complaints. Moreover, the complaint in question was not to a treating physician, but to a nurse. R. 181. The record fully supports the ALJ's conclusion that the Claimant did not routinely complain of medication side effects and that the medications did not cause serious functional limitations. Given the

fact that there is an extensive record in this case, with many pages of medical records, and there is only one page that contains any reference to Claimant's alleged side effects, the ALJ correctly considered the objective medical evidence regarding Claimant's alleged side effects. R. 20. Just because a claimant has a certain condition does not mean that the condition in fact caused certain possible symptoms. *Schmidt*, 395 F.3d at 745-46.

**B. THE ALJ'S CONSIDERATION OF CLAIMANT'S NEED FOR A CANE IS NOT RELEVANT TO THE ULTIMATE DISABILITY DETERMINATION**

Claimant's second argument is that the ALJ misconstrued the record and erred in determining that Claimant does not require a cane, which in turn affected the final RFC determination. However, where the VE testifies at the administrative hearing that there are a significant number of jobs available in the economy that will accommodate Claimant's limitations, including a cane, a finding of no disability is required. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989) (holding that the claimant's argument that she needed a sit/stand option in her RFC was inconsequential due to the fact that the VE identified a number of jobs with a sit/stand option). In this case, the VE identified 18,200 representative jobs available to an individual of Claimant's background who was able to perform a sedentary job subject to occasional cane use. Therefore, whether Claimant required a cane is irrelevant to the ALJ's final determination that Claimant was not disabled.

**C. THE ALJ PROPERLY CONSIDERED CLAIMANT'S OBESITY**

Claimant's final argument is that the ALJ erred by failing to consider the impact of Claimant's obesity upon Claimant's RFC. Obesity is a medical condition that must be considered in combination with a claimant's other impairments in evaluating disability. SSR

02-01p. Claimant argues that while the ALJ considered the objective evidence of DJD and what might reasonably be expected based on that evidence, he did not consider obesity and its impact on Claimant's overall condition. P. Mot. 13. In response, the Commissioner argues that the ALJ mentioned obesity several times in his decision, which is sufficient consideration given that Claimant did not argue that the evidence suggested obesity caused his condition to be more debilitating than represented by the medical findings. D. Mot. 7-8. This Court agrees with the Commissioner; Claimant did not argue that his obesity was a cause of his disability either in his initial application for benefits or in his request for a hearing. Nonetheless, the ALJ considered Claimant's obesity as one of Claimant's impairments. R. 19. The ALJ properly considered the evidence regarding Claimant's obesity because the Claimant failed to present evidence of any functional limitations resulting specifically from his obesity. *Essary v. Commissioner of Social Security*, No. 03-6233, 2004 WL 2452596, at *5 (6th Cir. Oct. 28, 2004).

## IV. CONCLUSION

**For the reasons set forth in this opinion, the Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted, and the decision of the Commissioner to deny Claimant's application for Disability Insurance Benefits and Supplemental Security Income is affirmed.**

**SO ORDERED THIS 11th DAY OF MAY, 2005.**

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

M. Jacqueline Walther
Kielian and Walther
33 W. Jackson Blvd., Suite 201
Chicago, Illinois 60604

Counsel for Claimant

Charles R. Goldstein
Special Assistant U.S. Attorney
200 W. Adams St., 30th Floor
Chicago, Illinois 60606

Counsel for Commissioner